UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61476-CIV-COHN/SELTZER

JAMES WILLIAMS,

    Plaintiff,

v.

CITY OF PLANTATION,
FLORIDA,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on a Motion for Summary Judgment filed by Defendant City of Plantation, Florida [DE 22]. The Court has thoroughly considered the parties' memoranda of law, the summary judgment record and the relevant law and is otherwise advised in the premises. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

This action was filed on October 16, 2007 pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Plaintiff, a paramedic formerly employed by the Defendant City of Plantation, Florida, alleges that the Defendant interfered with his statutory rights under the FMLA and subsequently retaliated against him for engaging in activity protected by the FMLA. The claims arise from the Plaintiff leaving work on February 3, 2007 to join his wife and seven-month old daughter at a children's hospital. Plaintiff's daughter had symptoms including a fever, shortness of breath and vomiting. Plaintiff's daughter was diagnosed with the croup.

On Saturday, February 3, 2007, Plaintiff showed up at work for a shift that ran from 7:00 a.m. until 7:00 a.m. the following day. (Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Def.'s Stmt.") ¶ 12.) Plaintiff testified that his daughter was not sick when he left for work that morning. (See, e.g., Exhibit ("Ex.") 15 to City of Plantation's Appendix in Support of its Motion for Summary Judgment ("Def.'s App.") at 174:4-6.) A report prepared by the emergency room doctor who attended to Plaintiff's daughter stated that her symptoms began on Friday night. (See Ex. 14 to Def.'s App.) Plaintiff's daughter was sick on Saturday and her condition became progressively worse throughout the day. (Def.'s Stmt. ¶ 14.) Plaintiff's wife testified that their daughter "had been increasing with fever during the day." (Ex. 20 to Def.'s App. at 25:3-4.) Plaintiff's daughter presented symptoms of a fever, frequent vomiting, shallow breathing and a raspy noise in her throat. (Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") ¶¶ 13-14.)

Plaintiff, while at work, spoke to his wife several times throughout the day on Saturday. (Def.'s Stmt. ¶ 14.) At 4:00 p.m. that day, Plaintiff advised his supervisor of his daughter's illness and stated that his wife wanted him to come home. (Id.) Plaintiff's supervisor informed him that the shift was already shorthanded and Plaintiff responded that he would stay as long as he could. (Id.) Later that day at around 6:00 p.m., Plaintiff's wife called to inform him that their daughter still had a fever. (Id. ¶ 15.) Plaintiff then asked the child's godfather, Israel Earls, who is also a paramedic, to go see the child. (Id.) After he arrived, Mr. Earls called the Plaintiff and recommended that the child go to the emergency room "where they could give her fluids and medication to break the fever." (Pl.'s Stmt. ¶ 15.) Plaintiff agreed and suggested that

child be taken to Joe DiMaggio Children's Hospital. (Def.'s Stmt. ¶ 16.)

After Plaintiff spoke with Mr. Earls, which was sometime shortly after 6:00 p.m., Plaintiff told his supervisor that he needed to leave work to go to the hospital. (Id. ¶ 18.) When Plaintiff requested leave, he advised his supervisor that his daughter had been sick all day with a fever, vomiting and shortness of breath and that she was on her way to the hospital. (Pl.'s Stmt. ¶ 18.) Plaintiff's supervisor contacted the duty chief for the shift and informed her of the situation. (Def.'s Stmt. ¶ 18.) The duty chief advised Plaintiff's supervisor that it would take time to locate a replacement and that Plaintiff was not to leave until his relief arrived. (Id.) Plaintiff's wife called again and advised Plaintiff that she was with the child at the emergency room. (Id. ¶ 19.) Ultimately, Plaintiff decided to leave before his replacement arrived and without express permission to do so. (Id. ¶ 21.) At the end of the shift, Plaintiff's supervisor prepared a report and a hearing was subsequently held on February 23, 2007 regarding the incident. (Id. ¶ 28.) Plaintiff was charged with unauthorized leave, insubordination and a violation of rules governing essential employees. (Id. ¶ 28.) It was recommended that Plaintiff be terminated. (Id.)

Turning back to Plaintiff's daughter, the child was seen by Dr. Kevin Schreiber, M.D. at 8:30 p.m. on February 3, 2007. (Ex. 14 to Def.'s App.) The child had a fever ranging between 101.7 to 102 degrees Fahrenheit, in addition to vomiting, barky cough and stridor with agitation. (Id.) Stridor with agitation means that if the child is upset or crying, stridor, *i.e.*, a high-pitched squeak, can be heard during inspiration. (Id.) The primary diagnosis was croup and the secondary diagnosis was vomiting. (Id.) Dr. Schreiber stated in an affidavit that croup is "a very common childhood illness." (Id.)

He further stated that at the time he saw Plaintiff's child, he "would not describe the child's illness as a serious medical condition. Although croup has the potential to deteriorate and require respiratory support, there was never any concern that this patient would have to be intubated." (Id.) In the emergency room, Plaintiff's daughter was given Decadron, mist, Zofran and Tylenol. (Id.) Decadron and the mist were given for inflammation, Zofran was given for vomiting and Tylenol was given for her fever. Dr. Schreiber re-examined the child at 10:30 p.m. and noted that her temperature was down to 101.4 degrees Fahrenheit. (Id.) The child was discharged at 10:55 p.m. with a prescription for Zofran and her "prognosis was very good." (Id.)

Plaintiff and his wife took their daughter home from the hospital and she slept all night. (Def.'s Stmt. ¶ 26.) On Sunday, Plaintiff testified that she "was acting a little better," her cough "had subsided a little" and her fever was down. (Ex. 15 to Def.'s App. at 239:23-240:4.) She slept and ate normally on both Sunday and Monday. (See id. at 240:14-23.) On Tuesday, February 6, 2007, the Plaintiff's daughter was seen by her pediatrician, Dr. Belliaminowa Jackson, M.D. Dr. Jackson testified that the child's physical exam was "completely normal" and she "was doing well." (Ex. 23 to Def.'s App. at 8:13-20.) Dr. Jackson testified that, in general, the recommended time to keep a child who is diagnosed with croup in isolation is "[n]o more than 48 hours." (Id. at 13:1-5.) Dr. Jackson further testified that "usually" a patient diagnosed with croup will be better in 24 hours and in "48 hours [the patient] has been seen by a pediatrician [and] on the third day the patient is fine." (Ex. 6 to City of Plantation's Supplemental Appendix in Support of its Motion for Summary Judgment ("Def.'s Supp. App.") at 12:14-17.)

4

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby,

5

911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### III. ANALYSIS

The FMLA grants an eligible employee the right to take up to 12 weeks of unpaid leave annually for any one or more of several reasons, including "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. §§ 2615(a)(1), 2617(a); see Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724-25 (2003). In this case, the threshold, and ultimately dispositive, question is whether Plaintiff's daughter suffered from a "serious health condition."

As defined in the FMLA, "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The legislative history states that examples of "serious health conditions" include, but are not limited to, the following:

> heart attacks, heart conditions requiring heart bypass of valve
> operations, most cancers, back conditions requiring extensive
> therapy or surgical procedures, strokes, severe respiratory
> conditions, spinal injuries, appendicitis, pneumonia, emphysema,
> severe arthritis, severe nervous disorders, injuries caused by
> serious accidents on or off the job, ongoing pregnancy,
> miscarriages, complications or illnesses related to pregnancy, such

> as severe morning sickness, the need for prenatal care, childbirth and recovery from childbirth.

S. Rep. No. 103-3, at 29, reprinted in 1993 U.S.C.C.A.N. at 31 (emphasis added). According to Congress, it is these types of conditions which "meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a recurring basis or for more than a few days for treatment or recovery." Id. "[S]erious health condition" is intended "to cover conditions or illnesses that affect the health of the child, spouse or parent such that he or she is similarly unable to participate in school or in his or her regular daily activities." Id. at 28. Congress sought to exempt those "minor illnesses which last only a few days and surgical procedures which typically do not involve hospitalization and require only a brief recovery period." Id. According to Congress, these illnesses should be covered by the employer's sick leave policy. Id.

The Department of Labor issued substantive regulations which further expound on the meaning of "serious health condition." The regulations state, in pertinent part, that:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
>
> ....
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or

> period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114; see also Russell v. North Broward Hosp., 346 F.3d 1335, 1342 (11th Cir. 2003). The regulations go on to state that "[o]rdinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine . . . are examples of conditions that do not meet the definition of serious health condition and do not qualify for FMLA leave . . . ." Id.

As an initial matter, the Court finds that under a "subjective" test, Plaintiff's claims would fail because croup is not a "serious health condition." In Miller v. North Little Rock Police Department, No. 4:06-CV-00515, 2007 WL 2156404 (E.D. Ark. July 24, 2007), a district court granted summary judgment on a FMLA claim holding that the plaintiff's daughter, who was diagnosed with croup, "was not suffering from a 'serious medical condition.'" Id. at *5. The court went on to note that croup was "a common childhood ailment" and that the "FMLA was never intended to provide unpaid leave for such illnesses." Id. at *5, n.7. Likewise, in Ryman v. Sears, Roebuck and Co., No. 05-CY-1106-BR, 2006 WL 1720534 (D. Or. June 19, 2006), a district court granted summary judgment on a FMLA claim of a plaintiff that left work to take care of a young son suffering from croup. The court reasoned that plaintiff "has not provided any

evidence such as a doctor's note or other medical documentation to show that his child's croup constituted a 'serious health condition.'" Id. at *5.  In the case at bar, rather than a lack of medical documentation, there is documentation contrary to Plaintiff's position.  The doctor that saw Plaintiff's daughter in the emergency room stated that he "would not describe the child's illness as a serious medical condition." (Ex. 14 to Def.'s App.)

The Court does not, however, base its decision solely on the fact that Plaintiff's daughter was diagnosed with croup.  The Court acknowledges that an absence to care for a child suffering from croup involving circumstances that meet the Department of Labor's definition of "serious health condition" would present a valid claim under the FMLA.  Indeed, the Eleventh Circuit has held that "the regulatory 'objective' test for 'serious health condition,' which avoids the need for employers – and ultimately courts – to make subjective decisions about statutory 'serious health conditions,' clearly is a permissible construction of the statute."  Russell, 346 F.3d at 1345.  Nevertheless, the Court finds that Plaintiff's claim fails under the "objective" test as well because there is insufficient evidence in the record to demonstrate that Plaintiff's daughter suffered from a period of incapacity lasting more than three consecutive calendar days.

As discussed above, the applicable Department of Labor regulation defining a "serious health condition," includes a requirement of a "period of incapacity (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days . . . ." 29 C.F.R. § 825.114(a)(2)(i).  The Eleventh Circuit has interpreted this regulation to mean that a "serious health condition" entails a period of incapacity

extending more than 72 hours. Russell, 346 F.3d at 1338.

Based on the record before the Court, when viewed in the light most favorable to the Plaintiff, the earliest the period of incapacity could start in this case is Friday night, February 2, 2003, which is the time the medical records state that Plaintiff's daughter began to present symptoms. It is undisputed that the child was incapacitated on February 3. On Sunday, February 4, there is also adequate evidence at this stage to demonstrate that Plaintiff's daughter was incapacitated. However, there is insufficient evidence in the record to allow a reasonable jury to find that the child was incapacitated on Monday, February 5. In his Statement of Material Facts, Plaintiff states that his "daughter did not go to daycare on Monday due to her fever." Pl.'s Stmt. ¶ 26. However, the only evidence cited in support of that statement is Plaintiff's testimony regarding his daughter's condition on Sunday.

> Q. And the next day was a Sunday, so both you and your wife were home, correct?
> A. Yes.
> Q. Was she better the next day?
> A. She was acting a little better, yes.
> Q. Was she still coughing as much, or had the cough subsided a little?
> A. It had subsided a little.
> Q. Fever down?
> A. Yes.
> Q. Okay. Completely gone, or –
> A. No, it was down.

(Ex. 15 to Def.'s App. at 239:18-240:4.)

In addition, to meet the Eleventh Circuit's test of a period of incapacity of "more than 72 hours," Plaintiff must be able to point to evidence in the record to demonstrate that his daughter was incapacitated beyond Monday night. No such evidence has been placed before the Court. The Court's finding that Plaintiff cannot establish that his

10

daughter was incapacitated for "more than 72 hours" is further supported by the testimony of the child's pediatrician that normally a child with croup should be isolated for "[n]o more than 48 hours," (Ex. 23 to Def.'s App. at 13:1-5), and that "on the third day the patient is fine." (Ex. 6 to Def.'s Supp. App. at 12:14-17.) Accordingly, the Court finds that there is insufficient evidence in the record to find that Plaintiff's daughter was incapacitated on Monday.

Plaintiff cites Brannon v. Oshkosh B'Gosh, Inc., 897 F. Supp 1028 (M.D. Tenn. 1995), in support of his argument that he has established that his daughter suffered from a "serious health condition." In Brannon, plaintiff's three-year old daughter became ill on Thursday evening, January 6, 1994, with symptoms of fever, sore throat, runny nose and vomiting. Id. at 1032. Plaintiff's daughter stayed home from daycare on Friday and when the child's health did not improve, plaintiff took her to the hospital on Sunday, January 9, 1994. Id. Significantly, the doctor that attended to plaintiff's daughter recommended that plaintiff's daughter stay home from daycare the following two days, January 10 and 11, 2004. Id. at 1032-33. The medical records contain a note: "Mom off work until 1/12/94." Id. Here, as discussed above, the child's pediatrician stated that the normal isolation period for a child diagnosed with croup is no more than 48 hours and that the child is usually fine by the third day. There is also nothing in the record that would indicate that Plaintiff's daughter had a "severe" case of croup that would remove this situation from the general diagnosis. Indeed, when discharged from the hospital on Saturday night, the doctor that attended to Plaintiff's daughter stated her "prognosis was very good." (Ex. 14 to Def.'s App.) In addition, when Plaintiff's daughter saw her pediatrician on Tuesday, Dr. Jackson testified that the

child's physical exam was "completely normal" and she "was doing well." (Ex. 23 to Def.'s App. at 8:13-20.)

Moreover, the opinion in <u>Brannon</u> affirmatively supports the Court's determination in this case. <u>Brannon</u> involved two FMLA claims: one claim for an absence related to the illness of plaintiff's daughter, which is discussed above, and a second claim for a separate absence related to plaintiff's own illness. <u>See</u> <u>Brannon</u>, 897 F. Supp. at 1031-32. With respect to the latter, the court found that although Plaintiff stayed home from work for more than three days, "there is no proof that plaintiff was 'incapacitated' for more than three calendar days." <u>Id.</u> at 1037. The court reasoned that a doctor "never advised plaintiff to remain off work" and that plaintiff's doctor's "speculation that it was reasonable for someone to miss three or four days is insufficient to prove that the absence was necessary." <u>Id.</u> In addition, the <u>Brannon</u> court found that "plaintiff's own testimony that she was 'too sick to work' is also insufficient to prove that her absence was necessary." <u>Id.</u>

The record in the case before this Court presents a weaker case than the one rejected in <u>Brannon</u>. There is no evidence of a doctor directing the child to stay home and the child's pediatrician stated that normally a child diagnosed with croup will be "fine" by the third day. (Ex. 6 to Def.'s Supp. App. at 12:14-17.) Plaintiff simply points to the fact that his daughter stayed home from daycare on Monday as opposed to any evidence that would allow for a determination that she was incapacitated so as to require such absence. Therefore, the Court finds that Plaintiff fails to establish a genuine issue of material fact as to whether his daughter was incapacitated by her illness for more than three calendar days. <u>See</u> <u>Seidle v. Provident Mut. Life Ins. Co.</u>,

871 F. Supp. 238, 243 (E.D. Pa. 1994) (finding plaintiff could not establish that the child was incapacitated for more than three days where "although [the child] did not attend his daycare center for four calendar days [ ], his incapacity (otis media) required him to be absent for only three calendar days").

In order to state either an interference or retaliation claim under the FMLA, a plaintiff must first demonstrate that the absence was related to a "serious health condition." See Drago v. Jenne, 453 F.3d 1301, 1305-06 (11th Cir. 2006); Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382-83 (11th Cir. 2005). Accordingly, the absence of sufficient record evidence to demonstrate that Plaintiff's daughter suffered from a "serious health condition" requires the dismissal of both Plaintiff's interference and retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 22] is **GRANTED**. The Court shall enter a separate judgment order consistent with the above ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 4th day of November, 2008.

JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record